UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

PATRICK SIMS,

                   Petitioner,              09 Civ. 4398

     -against-                           OPINION

ROBERT ERCOLE,

                   Respondent.

------------------------------------X

A P P E A R A N C E S:

        Pro Se

        PATRICK SIMS
        #05-a-3881
        Green Haven Correctional Facility
        Stormville, NY  12582

        Attorneys for Respondent

        ANDREW M. CUOMO
        Attorney General of the State of New York
        120 Broadway
        New York, NY  10271
        By:  Alyson J. Gill, Esq.
             Priscilla Steward, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4│23│10

**Sweet, D.J.**

Petitioner Patrick Sims (the "Petitioner"), <u>pro se</u>, seeks under 28 U.S.C. § 2254 a writ of habeas corpus alleging that: (1) the trial court violated Petitioner's due process rights by permitting the prosecutor to cross-examine Petitioner about the nature and underlying facts of his prior weapon possession conviction; (2) the prosecutor violated the trial court's <u>Sandoval</u> ruling by cross-examining Petitioner regarding an event that occurred in 2003; (3) the prosecutor committed misconduct during her summation by castigating Petitioner as the neighborhood bad guy; and (4) Petitioner's sentences were excessive.  Upon the facts and conclusions set forth below, the petition is denied.

**Prior Proceedings**

By Indictment Number 3223/04, a New York County grand jury charged Petitioner with one count each of first-degree assault and criminal possession of a weapon in the second and third degrees.  On September 8, 2004, the Honorable Judith Sudolnik conducted a hearing and denied Petitioner's motion to suppress identification evidence and

1

the clothing recovered from him. Petitioner proceeded to
trial before the Honorable Lewis Bart Stone and a jury.
During the trial, the third-degree weapon possession charge
was dismissed. On September 22, 2004, Justice Stone
declared a mistrial because the jury was unable to reach a
verdict. Petitioner thereafter proceeded to a second jury
trial before Justice Sudolnik, who declared a mistrial on
November 10, 2004 because the jury was unable to reach a
verdict. On June 13, 2005, Petitioner proceeded to a third
trial before the Honorable Roger Hayes and a jury.

On June 9, 2005, prior to jury selection, Justice
Hayes asked the prosecutor which of Petitioner's prior
criminal acts the People wished to cross-examine Petitioner
about in the event he chose to testify. The prosecutor
stated that she wished to inquire about the following
facts: (1) Petitioner's 1994 youthful offender
adjudication for third-degree robbery, stemming from an
incident in which Petitioner and two cohorts stole money
while threatening the victim with a pistol; (2) a 1998
weapon possession conviction, in which the police recovered
a loaded .25 caliber pistol and two bags of crack cocaine
from Petitioner; (3) a 2003 disorderly conduct conviction,
stemming from Petitioner's street for the possession of 8

2

bags of heroin; and (4) a 2003 indictment for armed
robbery, stemming from an incident in which Petitioner
stole jewelry from two victims by pointing a gun at their
heads.

The court ruled that the prosecutor could cross-
examine Petitioner about the 1998 weapon possession
conviction, that the prosecutor could ask Petitioner about
the underlying facts of Petitioner's possession of the gun,
but she could not ask about the drugs recovered from
Petitioner in that case. The court barred the prosecutor
from eliciting any testimony regarding the remaining
crimes.

In a separate application, the prosecutor sought
permission to elicit testimony during her direct case that,
while investigating an unrelated case in 203, Petitioner
was arrested inside the home of Ronald Williams, whom the
assault victim, Antoine Parsley, identified from a photo
array as being present with Petitioner during the shooting.
The court ruled that, while the prosecutor could not elicit
evidence regarding Petitioner's arrest, she could elicit
evidence that Petitioner was seen with Williams at his home

3

located at 280 Madison Street. The defense lodged no
objection to the court's ruling.

On June 13, 2005 a trial on the charges
commenced.

On June 20, 2005, the jury convicted Petitioner
of first-degree assault and second-degree weapon
possession. Thereafter, Petitioner was adjudicated a
second violent felony offender. On July 14, 2005,
Petitioner was sentenced to concurrent, determinate prison
terms of 17 years on the assault count and 15 years on the
weapon possession count plus 5 years of post-release
supervision.

On appeal, Petitioner was represented by Carol A.
Zeldin of the Center for Appellate Litigation and contended
that: (1) the trial court violated Petitioner's due
process rights by permitting the prosecutor to cross-
examine Petitioner about the nature and underlying facts of
his prior weapon possession conviction; (2) the prosecutor
violated the trial court's Sandoval ruling by cross-
examining Petitioner regarding an event that occurred in
2003; (3) the prosecutor committed misconduct during her

4

summation by castigating Petitioner as the neighborhood bad guy; and (4) Petitioner's sentences were excessive. On January 22, 2008, the Appellate Division, First Department, unanimously affirmed the judgment of conviction. People v. Sims ("Sims I"), 47 A.D.3d 494, 494-95 (N.Y. App. Div. 2008). The Appellate Division held that the trial court's Sandoval ruling "balanced the appropriate factors and was a proper exercise of discretion." Id. at 494. The Appellate Division further concluded that the trial court "imposed appropriate limits on the prosecutor's inquiry into [Petitioner's] extensive criminal record" and that inquiry into Petitioner's prior weapon possession conviction, "although similar to the crimes charged in this case, was relevant to his credibility." Id. at 494-95.

The Appellate Division also held that "[t]he prosecutor did not violate the court's ruling that had precluded inquiry into a robbery with which [Petitioner] had been charged in 2003" and that the trial court "properly permitted the prosecutor to impeach [Petitioner's] trial testimony by way of an inconsistency contained in his 2003 grand jury testimony, since [Petitioner] opened the door to such impeachment." Id. The Appellate Division noted that the prosecutor's inquiry

5

"did not reveal to the trial jury that [Petitioner] had testified before the grand jury in 2003 as anything but a witness, nor did it suggest that [Petitioner] had committed a crime or bad act in that connection." Id.

The Appellate Division further held that Petitioner's "remaining contentions concerning the prosecutor's cross-examination and summation are unpreserved and we decline to review them in the interest of justice." Id. Alternatively, the court rejected the merits of Petitioner's claims. Id. The court also rejected Petitioner's ineffective assistance of counsel claim. Id. Finally, the Appellate Division concluded that it "perceive[d] no basis for reducing the sentence." Id.

Petitioner sought to leave to appeal to the New York Court of Appeals and by certificate dated April 21, 2008, the New York Court of Appeals denied Petitioner's leave application. People v. Sims ("Sims II"), 10 N.Y.3d 844 (2008).

On June 15, 2007, while Petitioner's direct appeal was pending, Petitioner filed a pro se motion pursuant to New York Criminal Procedure Law ("CPL")

6

§ 440.10, in the New York County Supreme Court, arguing
that: (1) he was denied the effective assistance of
counsel; (2) he had discovered new evidence which could not
have been discovered prior to trial; (3) the judgment of
conviction was procured by duress, misrepresentation, or
fraud; and (4) the complainant's injuries did not
constitute a serious physical injury to support a
conviction for first-degree assault.

On November 7, 2007, the New York County Supreme
Court denied Petitioner's CPL § 440.10 motion. The court
held that "[w]ith the exception of [Petitioner's]
allegation of ineffective assistance of counsel, all of
[Petitioner's] remaining claims are procedurally barred
from this [c]ourt's review and must be denied." Relying on
CPL § 440.10(2)(c), the court stated that Petitioner's
remaining claims "involve on-the-record matters" that could
have been raised on direct appeal, but were not. Thus, the
court concluded that it was foreclosed from reviewing those
claims.

The court rejected Petitioner's ineffective
assistance of counsel claim, finding that the record did
"not establish ineffective assistance of counsel, as trial

counsel provided meaningful and competent representation
. . . and [Petitioner] has not proven his attorney's
performance had a prejudicial effect on the outcome of the
trial."

        The court further concluded that, with respect to
Petitioner's claim that two 911 Sprint printouts
constituted newly discovered evidence, the court concluded
that the evidence was not newly discovered since the
printouts were provided to defense counsel prior to trial.
In addition, the court concluded that even if the printouts
had been discovered after trial, because of the
overwhelming evidence of Petitioner's guilt, there was no
probability that the evidence would have changed the result
at a new trial.

        Finally, the court concluded that "the quantum of
proof with respect to serious physical injury was
sufficient to support a conviction for Assault in the First
Degree" given that the victim was shot in the leg and
required hospitalization.  The court found that the
extensive medical records introduced at trial demonstrated
that the victim's injury "create[d] a substantial risk of

8

death."   Therefore, the evidence was legally sufficient to
support a conviction for first-degree assault.

Petitioner filed a pro se application for leave
to appeal the denial of the CPL § 440.10 motion to the
Appellate Division, First Department.   On April 4, 2008,
the Appellate Division, First Department, denied
Petitioner's leave application.

The Petitioner filed his petition on May 7, 2009
and it was marked fully submitted on November 6, 2009.

## The Petition Is Timely and Exhausted

The petition is timely.   Petitioner was denied
leave to appeal his conviction to the New York Court of
Appeals on April 21, 2008.   Sims II, 10 N.Y.3d at 844.   His
conviction became final ninety days later, on July 20,
2008, the date on which his time to seek a writ of
certiorari to the Supreme Court expired.   See Williams v.
Artuz, 237 F.3d 147, 151 (2d Cir. 2001).   The pro se
petition, dated April 7, 2009, and filed in the Pro Se
Office of this Court on April 10, 2009, was filed within

9

the one-year limitations period set forth in 28 U.S.C. §
2244(d)(1), and is therefore timely.

The petition is exhausted. A federal court may
not consider the merits of a claim unless that claim was
fairly presented to the "highest state court from which a
decision can be had." Daye v. Att'y Gen. of New York, 696
F.2d 186, 190 n.3 (2d Cir. 1982) (en banc); see also Picard
v. Connor, 404 U.S. 270, 275 (1971). "In order to have
fairly presented his federal claim to the state courts the
petitioner must have informed the state court of both the
factual and the legal premises of the claim he asserts in
federal court." Daye, 696 F.2d at 191. To present the
legal basis of a federal claim to the state courts, a
petitioner need not cite "book and verse on the federal
constitution," but may instead, for example, rely on
federal constitutional precedents, claim "the deprivation
of a particular right specifically protected by the
Constitution," or cite state precedent that "employs
pertinent constitutional analysis." Id. at 192-94.

The Petitioner exhausted all of his claims
related to the Sandoval issue and the prosecutor's alleged
misconduct during cross-examination and summation by

10

raising his claims in federal constitutional terms in the
state courts.  In advancing his claims, Petitioner cited
the federal constitution and federal case law; he also
alleged the deprivation of federal constitutional rights.
Petitioner further sought leave to appeal and asked the New
York Court of Appeals to review his claims.  Therefore,
these claims are properly exhausted.

Petitioner also exhausted his excessive sentence
claim.  Petitioner raised this claim in federal
constitutional terms in his brief to the Appellate Division
by citing to federal case law.  And since the Appellate
Division was the highest state court with the authority to
consider an excessive sentence claim, Petitioner was not
required to ask the New York Court of Appeals to consider
it.  Therefore, his excessive sentence claim is properly
exhausted.

**Standard of Review**

As to any claim adjudicated on the merits in
state court, Petitioner can only obtain habeas corpus
relief by showing that the state court decision was
"contrary to, or involved an unreasonable application of,

11

clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). With respect to the "contrary to" clause, the writ may issue if the state court decision is contrary to Supreme Court precedent on a question of law or if the state court decision addresses a set of facts "materially indistinguishable" from a relevant Supreme Court case and arrives at a result different than that reach by the Court. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court decision involves an "unreasonable application" of Supreme Court precedent when the state court either "identifies the correct governing legal rule" from the Supreme Court's cases but "unreasonably applies it to the facts" of the case, or "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. Any determination of a factual issue made by a state court must be presumed correct unless the petitioner can show by clear and convincing evidence that such presumption should not apply. See 28 U.S.C. § 2254(e)(1); Leka v. Portuondo, 257 F.3d 89, 98 (2d Cir. 2001).

**The Claim Regarding the Trial Court's <u>Sandoval</u> Ruling
Does Not Present a Federal Constitutional Question**

A claim based on an alleged <u>Sandoval</u> violation
concerns a matter of state evidentiary law.  Alleged trial
court errors on evidentiary matters do not pose a federal
constitutional issue unless "the trial court committed
error that constitutes a deprivation of a constitutionally
recognized right."  <u>Senor v. Greiner</u>, No. 00-CV-5673, 2002
WL 31102612, at *12 (E.D.N.Y. Sept. 18, 2002).  Thus, the
Petitioner is not entitled to relief unless the error
resulted in a trial that "deprive[d] the [petitioner] of
fundamental fairness," thereby violating due process.
<u>Rosario v. Kuhlman</u>, 839 F.2d 918, 924 (2d Cir. 1988).
Because the prosecutor's questions to Petitioner were
appropriate under state law, his claim does not raise a
federal constitutional issue.

Under New York law, a criminal defendant who
testifies at trial may be impeached using evidence of his
criminal convictions or prior bad acts that bear logically
on his credibility as a witness.  See <u>People v. Gray</u>, 84
N.Y.2d 709, 712 (1995) (citing <u>People v. Sandoval</u>, 34
N.Y.2d 371, 374 (1974)).  In determining what, if any,

13

prior criminal acts may be used to impeach a defendant, the trial court must balance "the probative worth of the evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction may have in discouraging him from taking the stand on his own behalf." Sandoval, 34 N.Y.2d at 375. The determination of whether and to what extent a defendant may be impeached using his prior criminal acts is committed to the sound discretion of the trial court. See Gray, 84 N.Y.2d at 712; People v. Walker, 83 N.Y.2d 455, 459 (1994).

Here, as the Appellate Division held, the trial court properly exercised its discretion by forbidding the prosecutor to inquire into all of Petitioner's prior criminal activities, except his 1998 weapon possession conviction. As the court noted, the steps of obtaining, loading, and carrying a gun entail Petitioner's deliberate decision to place his own interests above those of society, which was relevant to his credibility. See Walker, 83 N.Y.2d at 461 (a defendant may be cross-examined about a

prior bad act that "significantly reveal[s] a willingness
or disposition on the part of the particular defendant
voluntarily to place the advancement of his individual
self-interest ahead of principle or of the interests of
society" (internal quotations omitted)).

        Although Petitioner's prior conviction was
similar to the charges in this case, that similarity does
not preclude the use of that prior conviction for cross-
examination.  See People v. Pavao, 59 N.Y.2d 282, 292
(1983) ("[Q]uestioning concerning other crimes is not
automatically precluded simply because the crimes to be
inquired about are similar to the crimes charged.").  New
York courts have held that a defendant is not entitled to
be insulated from impeachment merely because he specializes
in a particular type of crime.  See People v. Reid, 190
A.D.2d 575, 575 (N.Y. App. Div. 1993) ("The fact that
defendant specializes in a particular type of criminal
activity does not insulate him from impeachment for such
activity."); People v. Rahman, 62 A.D.2d 968, 968 (N.Y.
App. Div. 1978) (to insulate a defendant from impeachment
on a prior conviction similar to the crime charged "serves
to make the criminal specialist a member of a chosen class,
free from the burden of having his credibility impeached

15

for prior convictions relating to his specialized field of endeavor — a result not envisioned under Sandoval"). Accordingly, the trial court properly exercised its discretion in allowing the prosecutor to cross-examine Petitioner about his 1998 weapon possession conviction, and the Appellate Division's rejection of Petitioner's claim was appropriate as a matter of state law.  Therefore, Petitioner has not demonstrated that the trial court's Sandoval ruling deprived him of fundamental fairness or violated his right to due process.

## The Claim that the Prosecutor Violated the Trial Court's Sandoval Ruling Does Not Present a Federal Constitutional Question

The Petitioner has contended that the prosecutor violated the trial court's Sandoval ruling by cross-examining him about a 2003 incident the court precluded from evidence.  At the outset, Petitioner's claim presents a state evidentiary issue, and it is well-established that state evidentiary rulings generally do not implicate the federal constitution, even if the ruling is found to be erroneous under state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Crane v. Kentucky, 476 U.S. 683, 689 (1986) (acknowledging "our traditional reluctance to impose

16

constitutional constraints on ordinary evidentiary rulings by state trial courts"). And, as the Second Circuit has stated, "not 'every error of state law can be transmogrified by artful argumentation into a constitutional violation.'" Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002) (quoting Sanna v. Dipaolo, 265 F.3d 1, 12 (1st Cir. 2001)).

Even if the state evidentiary ruling were erroneous, habeas relief would only be available if the petitioner can establish that the error denied him a fundamentally fair trial. See Rosario, 839 F.2d at 924. Indeed, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).

As set forth above, in addition to the Sandoval ruling, the trial court issued a separate ruling permitting the prosecutor to elicit evidence that Petitioner was with Ronald Williams in his Madison Street apartment on January

17

29, 2003, as long as she did not reference any criminal conduct taking place in connection with that incident. The evidence was relevant because it helped to establish Petitioner's identity as the person who shot Parsley, since Parsley identified Williams as one of the men with Petitioner at the time of the shooting, and the police observed Petitioner trying to flee into the building where Williams lived. Petitioner did not challenge the propriety of that ruling either at trial, on appeal, or in his habeas petition. Because the prosecutor's questions adhered to the trial court's ruling and were proper under state law, Petitioner's claim of a constitutional violation has not been established.

During Petitioner's cross-examination testimony, Petitioner admitted that he knew Ronald Williams (T: 649-50). When the prosecutor asked him whether he was at 280 Madison Street in January 2003 waiting for Williams, Petitioner testified that he was at the apartment waiting for Williams's sister Camile (T: 650). The prosecutor sought to impeach him with his sworn grand jury testimony from 2003 in which he testified that he was at the apartment waiting for Williams to return and give him money. When questioned about it, Petitioner admitted that

he had given that testimony to a grand jury (T: 650-51).
Thus, consistent with New York law, the prosecutor properly
impeached Petitioner's trial testimony with his own prior
inconsistent statement. See People v. Montalvo, 285 A.D.2d
384, 384 (N.Y. App. Div. 2001) (the prosecutor could
properly use the defendant's prior inconsistent statement
from his grand jury testimony to impeach his trial
testimony).

Contrary to Petitioner's contention, the
prosecutor's use of Petitioner's grand jury testimony to
impeach him did not suggest to the jury that he had been
accused of another crime. As the Appellate Division
concluded, the fact that Petitioner testified before a
grand jury in 2003 did not suggest to the jury that he had
been accused of another crime. While it does suggest that
Petitioner was a witness to a grand jury investigation,
there was no reason for the jury to infer that Petitioner
himself was the target of that investigation. The
prosecutor did not suggest that the 2003 incident involved
any criminal activity or bad behavior on Petitioner's part.
Petitioner suffered no prejudice in connection with this
line of questioning and he cannot demonstrate that he was

19

deprived of fundamental fairness amounting to a denial of
his due process rights.

Additionally, Petitioner has not established that
he was denied a fundamentally fair trial. See Rosario, 839
F.2d at 924. The evidence of Petitioner's guilt was
substantial. Parsley was acquainted with Petitioner even
before the shooting, and the two men exchanged words only
three hours prior to the crime. Moreover, Parsley and
Patterson had ample opportunity to observe the shooter
since he made no attempt to hide his face, even though he
accosted the victim on a bright, clear afternoon. Both
Parsley and Patterson identified Petitioner as the shooter
within 15 minutes of the crime. Given the evidence of
Petitioner's guilt, the knowledge that Petitioner had
testified before a grand jury in 2003 was at most harmless
error

Because Petitioner's claim that the trial court's
Sandoval ruling unfairly prejudiced him does not state a
federal question and the claim that the prosecutor
improperly violated the trial court's Sandoval ruling
involved a matter of state law, neither presents an issue
for habeas relief.

## The Claim Based on the Prosecutor's Summation is
## Barred by an Adequate and Independent State Law Ground

Petitioner has contended, as he did on direct
appeal, that his right to a fair trial was violated
because, during her summation, the prosecutor characterized
Petitioner as "fighting her" on cross-examination and
referred to Petitioner as the "neighborhood bad guy"
(Petition Attachment; Exhibit A at 31). A habeas court may
not review a federal issue when the latest state court's
ruling on the claim rested upon "a state law ground that is
independent of the federal question and adequate to support
the judgment." Coleman v. Thompson, 501 U.S. 722, 729
(1991).

Although only a "firmly established and regularly
followed state practice" may be interposed by a state to
prevent subsequent review of a federal constitutional
claim, James v. Kentucky, 466 U.S. 341, 348-49 (1984), the
New York contemporaneous objection rule, set forth in CPL
§ 470.05(2), and applied by the Appellate Division in
Petitioner's case — that a challenge to the prosecutor's
summation remarks must be preserved by a specific objection

21

— has been recognized as such a firmly established and regularly followed rule. See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999) (recognizing that New York's consistent application of its contemporaneous objection rules is an adequate bar to federal habeas review); Simpson v. Portuondo, No. 01 Civ. 8744, 2002 WL 31045862, at *4 (S.D.N.Y. June 4, 2002) ("New York's contemporaneous objection rule is firmly established and regularly followed by state counts, as the Second Circuit has long recognized.").

Because the Appellate Division invoked this adequate and independent state law ground in denying Petitioner's claim that the prosecutor's summation remarks violated his right to a fair trial, this Court is barred from considering the merits of Petitioner's claim. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (when a state court explicitly invokes a state procedural bar rule, federal habeas review is precluded). This is so regardless of the fact that the Appellate Division alternatively ruled that, even if it were to review the claim, it would reject it. Where a claim is not preserved, the habeas court may not review the issue, even if the state appellate court also ruled on the merits of the claim. See Green v.

Travis, 414 F.3d 288, 294 (2d Cir. 2005); Glenn v.
Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996).

Moreover, application of the preservation rule in
this circumstance satisfies the three relevant factors to
consider in determining the propriety of reliance on a
procedural default: "(1) whether the alleged procedural
violation was actually relied on in the trial court, and
whether perfect compliance with the state rule would have
changed the trial court's decision; (2) whether state
caselaw indicated that compliance with the rule was
demanded in the specific circumstances presented; and (3)
whether petitioner had 'substantially complied' with the
rule given 'the realities of trial,' and, therefore,
whether demanding perfect compliance with the rule would
serve a legitimate governmental interest." Cotto v.
Herbert, 331 F.3d 217, 240 (2d Cir. 2003).

As for the first Cotto factor, nothing in the
record indicates that the trial court was aware of
Petitioner's contention that the prosecutor's summation
remarks violated his due process rights. Thus, "[i]t
is . . . meaningless to ask whether the alleged procedural
violation was actually relied on in the trial court — the

23

violation only first occurred when defendant raised an argument on appeal that he had not raised earlier." Garvey v. Duncan, 485 F.3d 709, 719 (2d Cir. 2007). As for the second factor, New York law requires compliance with the preservation rule in this specific context. See People v. Tonge, 93 N.Y.2d 838, 839-40 (1999) (specific objection required to preserve summation claims); People v. Ruiz, 8 A.D.3d 831, 832 (N.Y. App. Div. 2004) (failure to object to prosecutor's summation remarks rendered appellate claim unpreserved for review). As for the third factor, Petitioner did not "substantially comply" with the preservation requirement. If Petitioner had raised the issue he now raises, the trial court could have addressed it or at least preserved the claim for appellate review.

To overcome this procedural bar and obtain federal review of his claim, Petitioner must demonstrate either cause for the default and prejudice resulting from the alleged constitutional error, or that the failure to consider the federal claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner has not established either cause for the default or prejudice. Indeed, Petitioner cannot

establish prejudice because Petitioner's claims are without merit. See Cappiello v. Hoke, 698 F. Supp. 1042, 1052 (E.D.N.Y.), aff'd, 852 F.2d 59, 60 (2d Cir. 1988) (holding that petitioner cannot establish prejudice when defaulted claim is without merit). Nor can Petitioner establish a fundamental miscarriage of justice, such as evidence establishing that he was actually innocent of the crime. Accordingly, Petitioner's claims that his due process rights were violated because of the prosecutor's summation remarks are procedurally barred by an adequate and independent state ground.

## The Claim that the Prosecutor's Summation Violated Due Process is Denied

It is well settled that the propriety of comments made by a prosecutor during summation generally does not present a meritorious federal question. See, e.g., Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) ("A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." (quoting United States v. Young, 470 U.S. 1, 11 (1985)). A prosecutor's remarks, even if improper and beyond the bounds of fair advocacy,

would not warrant the granting of a writ unless the remarks caused a Petitioner substantial prejudice. Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990). The Supreme Court has held that it "is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainright, 477 U.S. 168, 181 (1986). Instead, the relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Indeed, the Second Circuit has held that improper summation comments are sufficiently prejudicial to support issuance of a writ of habeas corpus only in "rare cases." Floyd v. Meachum, 907 F.2d 347, 348 (2d Cir. 1990).

When confronted with this issue, the court must evaluate the statements against the backdrop of the whole trial and should consider the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the improper statements. See Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998).

26

Here the prosecutor, during summation, properly summarized and made fair comments on the evidence. The prosecutor's statement to the jury that Petitioner was "fighting" her during cross-examination referred to his refusal to answer her questions directly (T: 762). Indeed, at the onset of cross-examination, the prosecutor asked Petitioner if they had ever spoken before, and Petitioner gave evasive answers, claiming that he could not remember if they had previously spoken (T: 639-40). On several occasions throughout, Petitioner either refused to answer the prosecutor's question, exhibited what appeared to be a disingenuously poor memory, or attempted to inject information beyond the question asked of him. As a result, the court admonished Petitioner that he was required to answer the questions that were asked of him (T: 642,648-49). Given these events, it was appropriate for the prosecutor to remind the jury of Petitioner's demeanor and to offer arguments about how his behavior reflected on his credibility. Furthermore, because defense counsel remarked during his summation testimony that Petitioner's testimony was "believable," that he was "not trying to hide anything," and that he was "trying to be basically honest," the prosecutor's remarks were proper rebuttal to defense counsel's assertions. See, e.g., Roman v. Filion, No. 04

27

Civ. 8022, 2005 WL 1383167, at *18 (S.D.N.Y. June 10, 2005)
("Under New York law, statements during summation are
permissible if they constitute a fair comment on the
evidence at trial and reasonable inference therefrom, or a
fair response to remarks made by the defense counsel during
summation." (internal quotations and citations omitted)).

Moreover, the prosecutor's reference to
Petitioner as the "neighborhood bad guy" was also a fair
comment on the trial evidence (T: 741).  The prosecutor
explained that Parsley had been acquainted with the
Petitioner, who presented himself as someone who wielded
power in the neighborhood.  Parsley recounted that when the
Petitioner first accosted Parsley prior to the shooting,
Petitioner said to him, "Do you know who I am?" (T: 43).
Parsley said that Petitioner made the statement so as to
suggest that "he had some kind of power" (T: 44).  After
shooting Parsley in broad daylight, inside a park filled
with people, he walked away "nonchalantly" as if "nothing
happened" (T: 203, 242, 278, 415, 423).  Selso DaSilva
testified that he observed Petitioner walking with a "tough
demeanor" that gave DaSilva "a bad feeling" (T: 238-39).
Given this evidence, the prosecutor's reference to
Petitioner as the "neighborhood bad guy" was justified.

Moreover, even if the summation comments challenged by Petitioner were improper, they did not rise to the level of a due process violation because Petitioner has not demonstrated "that he suffered actual prejudice because the prosecutor's [conduct] had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994). The evidence of Petitioner's guilt was substantial. The jury had ample evidence from which to conclude that Petitioner was the person who shot Parsley. As such, even if the challenged comments could be considered improper, they resulted in no prejudice to Petitioner, and, therefore, did not violate his constitutional due process rights. See, e.g., Dickens v. Herbert, No. 00 CIV. 3249, 2002 WL 1728514, at *7-*10 (S.D.N.Y. July 25, 2002) (no habeas relief where prosecutor's comments in summation did not result in substantial prejudice).

The claim that the prosecutor's summation violated his due process rights process rights is therefore barred by an adequate and independent state law ground and is without merit.

29

## **The Sentence Does Not Present a Federal Question**

Petitioner has contended, as he did in his appellate brief, that his sentence was excessive.  The Appellate Division rejected Petitioner's claim, holding that it "perceive[d] no basis for reducing the sentence." Sims I, 47 A.D.3d at 495.  The claim is not cognizable on federal habeas review.

When a prisoner's sentence falls within the limits set by the state legislature, the prisoner's claim that his sentence is harsh and excessive does not present a basis for habeas corpus relief, as it does not present a federal constitutional question.  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Bellavia v. Fogg, 613 F.2d 369, 373-74 n.7 (2d Cir. 1979) (sentencing statute is properly the province of the state legislature and long mandatory sentence imposed pursuant to statute did not constitute cruel and unusual punishment).[1]

---

[1]    Notably, Petitioner does not claim that his sentence violates his Eighth Amendment rights.  That is not surprising since the Eighth Amendment's prohibition against cruel and unusual punishment "forbids only extreme sentences which are 'grossly disproportionate' to the crime."  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (quoting Solem v. Helm, 463 U.S. 277, 288 (1983)); see also United States v. Yousef, 327 F.3d 56, 163 (2d Cir. 2003) (stating that lengthy prison sentences do not violate the Eighth Amendment's prohibition against cruel and unusual punishment if based on a proper application of the sentencing guidelines or applicable statutes).

Petitioner's sentence on the assault count was within the limits set by the state legislature. Assault in the First Degree is classified as a class B violent felony. N.Y. Penal Law §§ 120.10(1), 70.02(1)(a). As a second violent felony offender, Petitioner was subject to a determinate sentence — ranging from 10 years to 25 years. N.Y. Penal Law § 70.04(3)(a). The Petitioner's determinate sentence of 17 years was within the statutory range.

The sentence on the weapon possession count was also within the range established by the New York State legislature. Criminal Possession of a Weapon in the Second Degree is classified as a class C violent felony. N.Y. Penal Law §§ 265.03, 70.02(1)(b). As a second violent felony offender, Petitioner was subject to a determinate sentence ranging from 7 years to 15 years. N.Y. Penal Law § 70.04(3)(b). The determinate sentence of 15 years was within the statutory range. Accordingly, the trial court sentenced Petitioner in full accordance with New York law, and his claim that his sentence was excessive does not present a federal question for review.

**Conclusion**

Based upon the facts and conclusions set forth above, the petition for a writ of habeas corpus is denied, and no certificate of appealability will issue.

So ordered.

New York, NY
April 2? , 2010

ROBERT W. SWEET
U.S.D.J.

32